UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

**Hon. Hugh B. Scott**

07CR45A

v.

**Report
&
Recommendation**

Jimmy Herring,

Defendant.

The defendant, Jimmy Herring, has filed an omnibus motion seeking the following relief:

suppression of evidence and statements; discovery and inspection; disclosure of Brady material,

disclosure of material under Rules 404, 608 and 609; and disclosure of Jencks Act material.[1]

**Background**

On February 22, 2007, a federal grand jury returned a one-count indictment charging the

defendant with illegal possession of a firearm and ammunition after having been previously

convicted of a felony in violation of 18 U.S.C. 922(g)(1). The defendants moves to suppress all

evidence and statements obtained in this case.

A suppression hearing was held on September 7, 2007.  Post trial memoranda were filed

---

[1]  The various discovery issues are resolved in a separate Decision & Order.

on October 19, 2007.  Christopher Gerace, a Buffalo Police Officer testified at the hearing.

According to Gerace, on November 13, 2006, at approximately 7:30 p.m., he and his partner,

Officer Timothy Rooney, were in a "detail car" assigned to an alleged "high crime" area in

Buffalo's Blackrock neighborhood.  (R. 5-6). Gerace testified that there is a house on Peter Street

that has been the subject of multiple complaints of narcotic activity.  On November 13, 2007,

Gerace observed Herring in the driveway of that house. Gerace testified that he had arrested

individuals at that house for drug activity just a few weeks prior. (R.  21).   Gerace and Rooney

determined to ascertain the identity of this individual. (R.  7).   The officers exited their vehicle

and approached Herring.   At that time, Gerace observed that Herring was "cradling" some object

underneath his clothing with one hand and his other hand was in his waist band area. (R.  8). The

object was in two pieces approximately 10 to 16 inches long. (R.  9).   The officers approached

Herring and commanded: "put your hands up, show me your hands." (R.  9). According to

Gerace, Herring continued to cradle the object and refused to remove his hands from his waist

band.  Gerace drew his weapon and again demanded that Herring show his hands. Again, Herring

refused. (R.  10). Gerace testified that although he did not know exactly what Herring was

cradling, he believed it was something that could harm him or his partner. (R.  32).   At that point,

Rooney and Gerace walked up to Herring and placed him in handcuffs. (R.  10).   A subsequent

pat down revealed that the object Herring was cradling was a loaded .22 caliber rifle broken

down into two pieces in a cloth bag with a drawstring (which had been hanging around his neck).

(R.  11).

### Discussion

The defendant argues that the officers had no basis to approach him on November 13,

2006.  Gerace testified that upon seeing Herring in the driveway of a house in which drug activity

was suspected, they determined to ascertain his identification. "[A] seizure does not occur simply

because a police officer approaches an individual and asks a few questions." Florida v. Bostick,

501 U.S. 429, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Rather, a seizure takes place "

'[o]nly when the officer, by means of physical force or show of authority, has in some way

restrained the liberty of a citizen.'" Bostick, 111 S.Ct. at 2386 (quoting Terry v. Ohio, 392 U.S.

1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). Otherwise, an encounter between

a police officer and a citizen is consensual, and implicates no Fourth Amendment interest.

Florida v. Rodriguez, 469 U.S. 1, 5-6, 105 S.Ct. 308, 310-11, 83 L.Ed.2d 165 (1984); United

States  v. Springer, 946 F.2d 1012, 1015 -1016 (2d. Cir. 1991).  In the instant case, the officers

did not require reasonable suspicion to approach Herring to ascertain his identity.  See INS v.

Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); United States v.

Mendenhall, 446 U.S. 544, 557-558, 100 S.Ct. 1870, 1878-1879, 64 L.Ed.2d 497 (1980);

Springer,  946 F.2d at 1016.

The observations of the officers as they approached Herring provide a sufficient

articulable basis for a more intrusive investigatory stop.  The "right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures," conferred

by the Fourth Amendment, is not infringed where police officers conduct an investigative stop,

based on reasonable suspicion, of a person suspected of criminal activity. *See* Terry v. Ohio, 392

U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting U.S. Const. amend. IV). The suspicion

that criminal activity is afoot must be both reasonable and articulable, *id.* at 30, 88 S.Ct. 1868,

and an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity is insufficient to

justify even a brief detention for the purpose of investigation, *id.* at 27, 88 S.Ct. 1868. What is

required is "some objective manifestation that the person stopped is, or is about to be, engaged in

criminal activity." *United* States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621

(1981).

A determination of whether reasonable suspicion existed requires an assessment of the

totality of the circumstances supporting the investigatory stop. Id. at 417-18, 101 S.Ct. 690. The

Court makes such an assessment in order to decide whether the officer's suspicion of wrongdoing

has an objective and particularized basis. Id. An officer may "draw on [his] own experience and

specialized training to make inferences from and deductions about the cumulative information

available to [him] that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S.

266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal citation omitted). When the noticed

presence of officers provokes a suspect's headlong flight in a high crime area, the officers are

justified in suspecting criminal activity on the part of the suspect and a Terry stop is warranted.

*See* Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Under these

circumstances, "the determination of reasonable suspicion [is] based on common sense

judgments and inferences about human behavior." Id. But only "the facts available to the officer

at the moment of the seizure" may be evaluated in our review of the determination. Terry, 392

U.S. at 21-22; United States v. Muhammad, 463 F.3d 115, 121 (2d. Cir. 2006).

This is not a case in which the reasonable suspicion to conduct a Terry stop was based

solely upon the observation that the individual was exiting a know drug house.  In the instant

4

case, the record reflects that as they approached Herring, the officers observed that the defendant

was cradling an object with one hand and had his other hand in his waistband.  This behavior,

along with the fact that Herring was observed on the premises of a house known to have been the

location of recent drug related activities, and the defendant's refusal to show his hands upon

multiple requests, provide an articulable basis for a reasonable suspicion that Herring may have

been involved in criminal activity.   Upon review of the totality of the circumstances, the

officer's conduct in placing Herring in handcuffs so that they could effectuate the Terry stop was

reasonable. United States v. Vargas, 369 F.3d 98, 102 (2d Cir.2004) ("[A]lthough under ordinary

circumstances, drawing weapons and using handcuffs are not part of  a Terry stop, intrusive and

aggressive police conduct is not an arrest when it is a reasonable response to legitimate safety

concerns on the part of the investigating officers."); United States v. Laing, 889 F.2d 281, 285

(D.C.Cir.1989) ("The amount of force used to carry out the stop and search must be reasonable,

but may include using handcuffs or forcing the detainee to lie down to prevent flight or drawing

guns where law officers reasonably believe they are necessary for their protection."); United

States  v. Rookard, 2007 WL 2176895, *7 (W.D.N.Y.,2007).


**Conclusion**

Based on the above, it is recommended that the defendant's motion to suppress the

evidence and statement in this case should be denied.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation

be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report &

Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District**

**Court's refusal to consider the objection.**

So Ordered.

_____/s/  Hugh B. Scott_____

United States Magistrate Judge

Western District of New York

Buffalo, New York

November 16, 2007