UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════════

UNITED STATES OF AMERICA


                                                    ORDER
              v.                                    07-CR-45A

JIMMY HERRING,

                        Defendant.

═══════════════════════════════════════


        This case was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C.

§ 636(b)(1).  Defendant Jimmy Herring filed a motion to suppress evidence and

statements.  On November 19, 2007, Magistrate Judge Scott issued a Report and

Recommendation recommending that the defendant's motion to suppress be denied.

        The defendant filed objections to the Report and Recommendation and the

government filed a response.  On April 8, 2008, this Court heard oral argument on the

objections.

        Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo*

determination of those portions of the Report and Recommendation to which objections

have been made.  Upon *de novo* review, and after reviewing the submissions and

hearing argument from the parties, the Court hereby adopts Magistrate Judge Scott's

Report and Recommendation and denies the defendant's motion to suppress.

        The facts leading up to the defendant's arrest are summarized briefly as follows.

On December 13, 2006, Buffalo Police Officers were on patrol when they saw the

defendant in the driveway of a house known for drug activity.  The house had been the

subject of multiple complaints for drug activity and the officers were aware of at least

one arrest that had occurred approximately one month earlier.  The house was also

located about 40 yards from a public park where drug activity was also alleged to have

occurred.

Upon seeing the defendant, the officers decided to "ascertain his identity."  Tr.[1]

at 7.  However, before doing so, they drove around the block.  When they returned,

they exited their car and began walking toward the defendant who, at that point, was

walking away from the house.  The officers noticed that the defendant was "cradling

some sort of object that was underneath his clothing" with one hand, while the other

hand was "in his waistband area."  Tr. at 8.  The object was  about 10 to 16 inches long.

Tr. at 9.

The officers commanded the defendant to stop and demanded that he put his

hands where they could see them.[2]  Tr. at 9.  The defendant ignored their request, and

the officers repeated it.  *Id*.  The defendant again ignored the request and instead

"turned half his back and walked away" in a "type of evasive manner."  Tr. at 10.  At that

point, one of the officers drew his weapon and demanded that the defendant show

them his hands.  The defendant complied.  The officers frisked the defendant and

---

[1]  "Tr," refers to the Transcript of the suppressing hearing of September 7, 2007.  See Dkt. 20.

[2]  The defendant argues that on cross-examination, the police officer contradicted his direct testimony as to when he first observed the object being concealed under the defendant's jacket.  The Court disagrees.  The officer's testimony on direct was clear - he observed the defendant cradling an object under his jacket *before* he ordered the defendant to stop and put his hands where the officers could see them.  The Court finds that this unequivocal testimony was not contradicted upon cross-examination.  In fact, it only makes sense that the officers observed the defendant hiding an object first, which is what prompted them to order the defendant to show them his hands.

discovered that the object he was concealing was a loaded .22 caliber rifle.

The defendant objects to Magistrate Judge Scott's determination that the officers had  had "reasonable suspicion" to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  The Court rejects the defendant's objection and finds that the officers had reasonable suspicion to conduct a *Terry* stop for the reasons stated in the Report and Recommendation..

In any event, the defendant initially ignored the officers' request to put his hands where they could see them and instead turned his back in an "evasive manner" and walked away.  Under clear Supreme Court precedent, the defendant was not "seized" for Fourth Amendment purposes until he complied with the officers' show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires *either* physical force . . . or, where that is absent, *submission* to the assertion of authority.") (emphasis in original).   The defendant's conduct in refusing to comply with the officers' show of authority by refusing to show his hands and actively turning his back away from them and walking away, all while continuing to conceal an unknown object under his clothing, may be considered in evaluating whether reasonable suspicion existed before the defendant was actually seized.  *See United States v. Swindle,* 407 F.3d 562, 568 (2d Cir.), *cert. denied*, 546 U.S. 913 (2005) (acknowledging that under *Hodari D.*, events occurring after the order to stop was given but before compliance may be used to support *Terry* stop); *see also United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000), *cert. denied*, 532 U.S. 1014 (2001) ("[W]hat [the defendant] did after he failed to comply with the police officers' orders can be considered in evaluating reasonable

3

suspicion."); *United States v. Johnson*, 212 F.3d 1313, 1317 (D.C. Cir. 2000) (basing finding of reasonable suspicion on defendant's "furtive" hand gestures made after officer, apparently without justification, drew gun and ordered defendant to put his hands up).

In sum, the Court finds that the officers had reasonable suspicion to stop the defendant based upon the totality of the circumstances, which include: (1) the defendant's presence in the driveway of a known drug house, (2) his hiding of an unknown object under his clothing;[3] (3) his refusal to comply with their initial request to show them his hands; and (4) his evasive conduct in turning his back on them and walking away, all of which occurred before the defendant was actually "seized." Further, the defendants' refusal to place his hands where the officers could see them coupled with their reasonable suspicion that criminal activity may be afoot justified their limited search of the defendant for weapons or objects that might pose a danger to the officers. *See McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997); *see also United States v. Torres*, 02-CR-1422 (FB), 2003 WL 22272152, at * 1 (E.D.N.Y., Oct. 3, 2003) ("Courts have consistently approved *Terry* stops and frisks when a defendant has placed his hands out of a police officer's line of vision.").

---

[3] Defendant's concealment of an unknown object under his clothing contributed to the officers' reasonable suspicion. *See e.g. United States v. Garcia,* 441 F.3d 596 (8th Cir. 2006) (finding that reasonable suspicion to stop was supported by the defendant's presence at a known drug house and his "furtive" conduct by attempting to make contact with residents of that house while concealing an object in his pants); *United States v. Mayo,* 361 F.3d 802 (4th Cir. 2004) (finding that suspect's hand movement suggesting to officers that he was concealing a "heavy" object in his coat pocket and his presence in high crime area were among the articulable factors justifying stop and frisk); *see also United States v. Padilla*, 06-CR-824, 2007 WL 1958894, at * 7 (E.D.N.Y. June 29, 2007) ("[A] an individual's hand gesture consistent with carrying a concealed weapon can give rise to a reasonable suspicion of illegal activity.").

Accordingly, for the reasons set forth herein and in the Magistrate Judge's Report and Recommendation, the motion to suppress is denied.


SO ORDERED.

s/ *Richard J. Arcar*a
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED:  May  6 , 2008

5